IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 24-cv-02880-PAB

CHRISTOPHER WEBER,

    Plaintiff,

v.

THE STATE OF COLORADO,
JEFFERSON COUNTY, COLORADO,
KATIE DEVRIES, Attorney, Sherman and Howard LLC,
SHERMAN AND HOWARD LLC,
DAVID LITTMAN, Littman Family Law, Mediator on the custody case, then Decision-Maker,
JEFFREY PILKINGTON, Chief Judge, 1st Judicial Court of Colorado,
LAURA TIGHE, Retired County Judge, Jefferson County,
JOEL SCHAEFER, Jefferson County Magistrate,
NICHOLAS CAMPBELL, Jefferson County Magistrate,
BRIAN BOATRIGHT, Colorado Supreme Court Chief Justice,
SUEANNA JOHNSON, Colorado Court of Appeals Judge for 1st District,
KYM SORRELLS, Jefferson County Attorney,
THE COLORADO COMMISSION ON JUDICIAL DISCIPLINE, CCJD,
THE COLORADO SUPREME COURT,
CHRISTOPHER GREGORY, the Colorado Commission on Judicial Discipline,
JEFFERY WALSH, the Colorado Commission on Judicial Discipline,
ELIZABETH MILLER, Mother, Ex-wife,

    Defendants.

---

# ORDER

---

This matter comes before the Court on plaintiff's Request for Immediate Emergency Relief Via Injunction Against the Jefferson County Court [Docket No. 27].

In light of plaintiff's pro se status, the Court construes his filings liberally. *See Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.

1991).  However, a court does not act as an advocate for a pro se litigant.  *See Hall*, 935 F.2d at 1110.

I. **BACKGROUND**

On October 17, 2024, plaintiff Christopher Weber filed this action.  Docket No. 1.  Mr. Weber brings seventeen claims for relief based on alleged violations of his Fourteenth Amendment rights to Due Process and Equal Protection and based on an alleged civil conspiracy to deprive him of his constitutional rights.  *Id.* at 2–3; Docket No. 1-3 at 1–16.  In particular, Mr. Weber alleges that, in custody proceedings between Mr. Weber and his ex-wife, Elizabeth Miller, over their son, MDW, the Jefferson County judicial system has deprived him of his constitutional rights for the past five years.  Docket No. 1-3 at 1.  Mr. Weber appears to allege that Magistrate Joel Schaefer improperly appointed David Littman as a mediator and decision-maker in the custody proceedings despite Mr. Littman not being qualified for these positions.  *Id.* at 1, 13.  Mr. Littman modified the custody arrangement between Mr. Weber and Ms. Miller, including changes to Mr. Weber's parenting time and child support obligations.  *Id.* at 1.  Mr. Weber alleges that, despite Magistrate Judge Schaefer later concluding that his appointment of Mr. Littman was improper, Mr. Littman remained active in the case until at least November 3, 2021.[1]  *Id.* at 2–3.

---

[1] It is not clear from Mr. Weber's complaint whether Mr. Littman is still a "decision maker" in the custody case.  Although Mr. Weber claims that the court refused to remove Mr. Littman from the case, Docket No. 1-3 at 2–3, he also claims that "Jefferson County allowed a third-party arbitrator to file a child support modification that matches the parenting time order filed by David Littman."  *Id.* at 13.  This suggests that Mr. Littman is no longer active in the case and has been replaced by a different arbitrator, although the new arbitrator appears to have proceeded in a manner consistent with Mr. Littman's orders and recommendations.

Mr. Weber states that, after becoming aware that Magistrate Judge Schaefer had improperly appointed Mr. Littman, resulting in multiple ultra vires modifications to Mr. Weber and Ms. Miller's custody arrangement, members of the Colorado judiciary conspired with counsel for Ms. Miller "to keep the case unresolved." *Id.* at 4. These judicial officers include Magistrate Judge Nicholas Campbell, Judge Laura Tighe, Chief Judge Jeffrey Pilkington, Colorado Court of Appeals Judge Sueanna Johnson, former Chief Justice of the Colorado Supreme Court Brian Boatright, as well as Christopher Gregory and Jeffery Walsh, acting as members of the Colorado Commission on Judicial Discipline. *Id.* at 4–16.

Mr. Weber states that he "filed a motion to modify parenting time in early 2022, in order to correct the orders on the case that were unlawfully modified by David Littman in February 2021," but that the "Jefferson County Court, and the Colorado court system in general, are deliberately preventing the motion from being resolved in order to avoid the court looking bad on the record." *Id.* at 5–6. Mr. Weber alleges that requested a "Magistrate Review" of the orders regarding Mr. Weber's custody rights from Judge Laura Tighe. *Id.* at 7–8. After an adverse ruling, Mr. Weber appealed the custody proceedings, but Colorado Court of Appeals Judge Sueanna Johnson terminated the appeal with prejudice. *Id.* at 8. Mr. Weber appears to have also filed complaints with the Colorado Commission on Judicial Discipline, but he claims that the Colorado Supreme Court "is participating in, or directing, the attempts to keep the custody case unresolved and to shut down investigations into misconduct of the judicial officers and attorneys involved." *Id.* at 8, 14–15.

Mr. Weber describes the current state of the custody case as follows:

3

> The current orders being enforced are massive modifications to decision-making and parenting time filed unlawfully by private citizen Defendant David Littman, whose role as Decision-Maker prohibited him from filing orders. . . . The Jefferson County Court is denying that it allowed David Littman to modify parenting time (it has not commented on his other filings) on the record, but off the record it is admitting it did . . . . The Colorado court system cannot claim that the current orders are in the best interests of the child because no such finding has ever been made. . . . Despite 5 ½ years of escalating litigation, the Colorado court system has NEVER taken a position on the best interests of the child, has not made a determination of appropriate parenting time, [and] has not made a determination of decision-making or child support. While the Jefferson County Court denies that it allowed David Littman to modify parenting time, Jefferson County allowed a third-party arbitrator to file a child support modification that matches the parenting time order filed by David Littman and is enforcing this order by garnishing Plaintiff's wages to pay Mrs. Miller child support for a parenting time schedule the Jefferson County Court denies is in effect.

*Id.* at 13.

In addition to monetary damages, Mr. Weber's complaint asks the Court to (1) order Jefferson County Court to vacate all orders that were filed in the custody case within the last five years, (2) order Jefferson County Court to terminate the custody case, (3) enjoin Jefferson County Court from issuing domestic orders regarding MDW, (4) order the state of Colorado to provide a plan within sixty days to remedy systematic corruption within the state's legal system, and (5) refer the matter to the Colorado Bar Association to conduct a public investigation into the proceedings in the custody case. Docket No. 1 at 4–5.

On December 20, 2024, Mr. Weber filed his motion for injunctive relief. Docket No. 27. In the motion, Mr. Weber states that Ms. Miller has filed a motion for a no-contact/protection order against Mr. Weber in Jefferson County Court as part of the ongoing custody dispute. *Id.* at 1, 3, ¶¶ 4, 9. Mr. Weber claims that Ms. Miller is unlikely to succeed on her motion because she will not be able to demonstrate that Mr. Weber "credibly threatened" her. *Id.* at 2–3, ¶¶ 5–9. He asserts that Mr. Weber and

Ms. Miller have not had in-person contact for two and a half years and have had no communication for more than a year. *Id.*, ¶¶ 5–7. Mr. Weber states that he was scheduled to appear to defend against Ms. Miller's motion for a protective order on December 23, 2024. *Id.* at 1, ¶ 5. Mr. Weber explains that "he is not requesting D. Colo. rule on the merits of Mrs. Miller's protection order request." *Id.* at 3, ¶ 10. Instead, "Mr. Weber only wishes to remove these matters from the Jefferson County Court, which is being sued in this lawsuit for improperly curtailing Plaintiff's rights." *Id.* The Court takes judicial notice of the fact that a Citation and Temporary Civil Protection Order Issued Pursuant to § 13-14-104.5 C.R.S. was issued in the Jefferson County Court custody case on December 23, 2024.[2] *Weber v. Weber*, 2017DR30759 (Colo. Dist. Ct. Dec. 23, 2024). At a hearing set for January 6, 2025, Mr. Weber has been ordered to show cause why the temporary protective order should not be made permanent. *Id.* at 1.

## II. LEGAL STANDARD

To succeed on a motion for a preliminary injunction, the moving party must show (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest. *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009) (citing *Winter v. Natural Res. Def.*

---

[2] *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) ("federal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue"); *United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007) ("we may exercise our discretion to take judicial notice of publicly-filed records in our court and certain other courts concerning matters that bear directly upon the disposition of the case at hand").

*Council, Inc.*, 555 US. 7, 20 (2008)); *see Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010)). "[B]ecause a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." *Beltronics USA, Inc. v. Midwest Inventory Distribution, LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009) (quoting *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1256 (10th Cir. 2003)) (internal quotation marks omitted). Granting such "drastic relief," *United States ex rel. Citizen Band Potawatomi Indian Tribe of Okla. v. Enter. Mgmt. Consultants, Inc.*, 883 F.2d 886, 888–89 (10th Cir. 1989), "is the exception rather than the rule." *GTE Corp. v. Williams*, 731 F.2d 676, 678 (10th Cir. 1984).

### III. ANALYSIS

The Court construes Mr. Weber's motion as a motion for a preliminary injunction pursuant to Federal Rule of Civil Procedure 65 enjoining the Jefferson County Court from ruling on Ms. Miller's motion for a protective order.[3]

Mr. Weber's motion is deficient for three reasons: the injunctive relief he seeks is moot, (2) the *Younger* abstention doctrine prohibits the Court from exercising jurisdiction over his motion, and (3) Mr. Weber has failed to demonstrate a likelihood of success on the merits of his claims.

---

[3] In his motion, Mr. Weber does not identify the specific injunctive relief he seeks. *See* Docket No. 27. Mr. Weber states that he wants to "remove these matters from Jefferson County Court." *Id.* at 3, ¶ 10. However, because Mr. Weber states that "he is not requesting D. Colo. rule on the merits of Mrs. Miller's protection order request," the Court does not interpret Mr. Weber's motion as an attempt to remove the custody proceedings to federal court. *Id.* Mr. Weber could not remove the custody proceeding to federal court because "[f]ederal courts do not have jurisdiction over cases involving divorce, child custody, and related issues." *Vogel v. Soliman*, No. 10-cv-01204-REB-MJW, 2010 WL 2163764, at *1 (D. Colo. May 27, 2010) (citing *Vaughan v. Smithson*, 883 F.2d 63, 64 (10th Cir. 1989) ("It is now well established that federal courts do not have diversity jurisdiction to grant a divorce or annulment, determine support payments, or award custody of a child.")).

"Under Article III of the Constitution [federal courts] may only adjudicate actual, ongoing controversies." *Honig v. Doe*, 484 U.S. 305, 317 (1988); *see also Wiley v. Nat'l Collegiate Athletic Ass'n*, 612 F.2d 473, 475 (10th Cir. 1979) (noting that mootness "has its constitutional origin in the 'case or controversy' limitation of Article III"). In determining whether a claim is moot, "[t]he crucial question is whether granting a present determination of the issues offered will have some effect in the real world." *Citizens for Responsible Gov't State Political Action Comm. v. Davidson*, 236 F.3d 1174, 1182 (10th Cir. 2000) (internal quotations and alterations omitted). The requirement of a live controversy exists at all stages of a case, not simply at the inception of the case. *Nat'l Advertising Co. v. City & Cnty. of Denver*, 912 F.2d 405, 411 (10th Cir. 1990). When it becomes "impossible for the court to grant any effectual relief whatever to a prevailing party, [the court] must dismiss the case, rather than issue an advisory opinion." *Fleming v. Gutierrez*, 785 F.3d 442, 445 (10th Cir. 2015) (quoting *Stevenson v. Blytheville Sch. Dist. No. 5*, 762 F.3d 765, 768 (8th Cir. 2014).

In his motion, Mr. Weber states that he "is now scheduled to appear in court December 23, 2024, to defend himself from charges that Mrs. Miller claims she is 'credibly threatened' by Mr. Weber." Docket No. 27 at 1, ¶ 5. The Jefferson County Court has ruled on Ms. Miller's motion and has issued a temporary protective order. *Weber*, 2017DR30759 at 1. As such, the event that Mr. Weber seeks to enjoin, namely, the ruling on Ms. Miller's motion for a protective order, has occurred, and his motion is moot.

Even if Mr. Weber's motion is not moot, given that there is a hearing on January 6, 2024 as to whether to make the protective order permanent, Mr. Weber's requested

7

relief is prohibited by the *Younger* abstention doctrine. In *Younger v. Harris*, the Supreme Court ruled that a federal district court's injunction of a pending state court criminal prosecution violated "the national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances." 401 U.S. 37, 41 (1971). *Younger* abstention requires "that federal courts not interfere with state court proceedings by granting equitable relief – such as injunctions of important state proceedings or declaratory judgments regarding constitutional issues in those proceedings – when such relief could adequately be sought before the state court." *Rienhardt v. Kelly*, 164 F.3d 1296, 1302 (10th Cir. 1999). Thus, after *Younger*, even when a federal court would otherwise have jurisdiction to grant declaratory or equitable relief, the court must abstain from exercising jurisdiction when a judgment on the claim would interfere with ongoing state criminal or civil proceedings. *D.L. v. Unified Sch. Dist.*, 392 F.3d 1223, 1227–28 (10th Cir. 2004); *see also Courthouse News Serv. v. N.M. Admin. Off. of Cts.*, 53 F.4th 1245, 1256 (10th Cir. 2022) ("*Younger* applies to the following three categories of state cases: (1) state criminal prosecutions, (2) civil enforcement proceedings, and (3) civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." (citations and quotation omitted)).

      The Supreme Court has established a three-part analysis for abstention under *Younger*. When a case filed in federal court raises the possibility of federal-court interference with state processes, the federal court must abstain if (1) there is an ongoing state judicial, civil, or administrative proceeding, (2) which implicates important state interests, and (3) in which there is an adequate opportunity to raise constitutional

challenges. *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 431–32 (1982); *Crown Point I, LLC v. Intermountain Rural Elec. Ass'n,* 319 F.3d 1211, 1215 (10th Cir. 2003). *Younger* abstention is not discretionary and, if abstention applies, a court must dismiss the claim without prejudice. *D.L. Unified*, 392 F.3d at 1228. The Tenth Circuit has "consistently applied *Younger* to child custody cases." *Morkel v. Davis*, 513 F. App'x 724, 728 (10th Cir. 2013) (unpublished) (collecting cases). "And, courts may address *Younger* abstention sua sponte." *Tereza v. Garland*, 2021 WL 5510243, at *1 (N.D. Okla. Nov. 24, 2021) (citing *Bellotti v. Baird*, 428 U.S. 132, 143 n.10 (1976) ("abstention may be raised by the court Sua Sponte.")).

The Tenth Circuit has held that the first prong of the *Younger* abstention analysis, whether there is an ongoing state judicial proceeding, is determined based on the time when the federal action was filed. *Dauwe v. Miller*, 364 F. App'x 435, 437 (10th Cir. 2010) (unpublished) (citing *Bear v. Patton*, 451 F.3d 639, 642 (10th Cir. 2006)). State proceedings end, and are therefore no longer ongoing, when a lower state court issues a judgment and the losing party allows the time for appeal to expire. *Bear*, 451 F.3d at 642 (citing *Federación de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico,* 410 F.3d 17, 24–25 (1st Cir. 2005)). Here, Mr. Weber's complaint indicates that the proceedings in the state custody case are ongoing. Docket No. 1-3 at 5. Mr. Weber has filed a motion to modify parenting time to correct the court's orders entered after Mr. Littman's involvement. *Id.* Moreover, the custody proceedings remain ongoing given the protective order against Mr. Weber. The order is a temporary restraining order, and the matter is set for another hearing on January 6, 2025. *Weber*, 2017DR30759 at 1. Therefore, the first prong of the *Younger* abstention analysis is

satisfied because there was an ongoing state proceeding at the time that Mr. Weber filed this case and because it is clear that the proceedings remain ongoing.

The Court will next consider the second prong of the *Younger* abstention analysis, whether the state custody case implicates important state interests. All seventeen of the claims asserted in Mr. Weber's federal complaint, including the ones alleging violations of the U.S. Constitution, are claims challenging orders in the Jefferson County custody case. Docket No. 1-3 at 1–16, *see Dauwe*, 364 F. App'x at 436–37 (affirming *Younger* abstention where plaintiff alleged that state judges' adverse rulings violated his right to due process, equal protection, and access to the courts under the U.S. Constitution because plaintiff's "pleadings clearly reflect[ed] an attempt to have the federal courts review and invalidate rulings made in his state cases"). The Tenth Circuit has held that "the resolution of child custody matters has been acknowledged as an important state interest." *Morkel*, 513 F. App'x at 729 (citing *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12–13 (2004) ("the whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States"). The "comity considerations of the *Younger* doctrine are particularly vital in child custody proceedings, which are 'an especially delicate subject of state policy.'" *Id.* (quoting *Morrow v. Winslow*, 94 F.3d 1386, 1393 (10th Cir. 1996)). Therefore, the Court finds that Mr. Weber's custody case implicates an important state interest and satisfies the second prong of the *Younger* abstention analysis.

As to the third prong of the *Younger* abstention analysis, whether there is adequate opportunity to raise federal claims in state proceedings, the Tenth Circuit has

10

noted that, "[a]s a general matter, 'Colorado law does not bar [federal constitutional] claims,'" finding abstention appropriate where "no particular reason appears why the objections advanced [in federal court] could not be given fully adequate consideration in the state courts." *Dauwe*, 364 F. App'x at 437 (quoting *Crown Point I,* 319 F.3d at 1215); see also *Moore v. Sims*, 442 U.S. 415, 425–26 (1979) ("Certainly, [*Younger*] abstention is appropriate unless state law clearly bars the interposition of the Constitutional claims."). Here, the constitutional and civil conspiracy claims in Mr. Weber's complaint ask the Court to review and invalidate orders in the Jefferson County Court custody case. Mr. Weber's complaint states that he appealed aspects of the custody proceedings, but that the appeal was terminated with prejudice. Docket No. 1-3 at 8. Mr. Weber does not identify whether he raised his constitutional challenges to the Jefferson County Court's orders on appeal. However, even if he did not, Mr. Weber does not explain why he could not have raised those issues on appeal or otherwise filed his constitutional claims in state court. Thus, not only is there adequate opportunity to raise federal claims in state proceedings as a general matter, but Mr. Weber appears to have had such an opportunity. The Court finds that the third prong of the *Younger* abstention analysis is satisfied. Because all three prongs of the *Younger* abstention analysis are satisfied, the Court would abstain from granting the injunctive relief Mr. Weber seeks even if the motion was not moot.

      Finally, Mr. Weber's motion for a preliminary injunction fails on the merits. As discussed above, to be entitled to a preliminary injunction, Mr. Weber must show a likelihood of success on the merits. *RoDa Drilling*, 552 F.3d at 1208. Mr. Weber's motion does not explain why he has shown a likelihood of success on the merits

concerning any of his seventeen claims for relief. See Docket No. 27. Thus, the Court would deny his motion for a preliminary injunction even if the motion was not moot and even if the *Younger* abstention doctrine did not apply. See *Oklahoma v. United States Dep't of Health & Hum. Servs.*, 107 F.4th 1209, 1228 n.19 (10th Cir. 2024) ("Given Oklahoma's failure to show a likelihood of success, we need not consider the other elements of a preliminary injunction." (citing *Warner v. Gross*, 776 F.3d 721, 736 (10th Cir. 2015)). For all these reasons, the Court denies Mr. Weber's motion for emergency injunctive relief.[4]

IV. **CONCLUSION**

Therefore, it is

**ORDERED** that the Request for Immediate Emergency Relief Via Injunction Against the Jefferson County Court [Docket No. 27] is **DENIED.** It is further

---

[4] The Court concludes that it can appropriately resolve the present motion without a hearing. See *Sgaggio v. Weiser,* No. 22-cv-01791-PAB, 2022 WL 3700723, at *4 n.2 (D. Colo. Aug. 26, 2022) (denying preliminary injunction motion without a hearing); *Zeller v. Ventures Tr. 2013-I-NH*, No. 15-cv-01077-PAB-NYW, 2015 WL 4720313, at *5 n.2 (D. Colo. Aug. 10, 2015) (denying preliminary injunction motion without a hearing) (citing *Prosper, Inc. v. Innovative Software Techs*, 188 F. App'x 703, 706 (10th Cir. 2006) (unpublished) (holding that district court did not abuse its discretion in failing to hold a hearing on motion for preliminary injunction); *Reynolds & Reynolds Co. v. Eaves*, 1998 WL 339465, at *3 (10th Cir. June 10, 1998) (table decision) (rejecting argument that court was required to hold evidentiary hearing on motion for preliminary injunction)); see also D.C.COLO.LCivR 7.1(h); Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings.").

**ORDERED** that, on or before January 10, 2025, plaintiff Christopher Weber shall show cause why the Court should not abstain from exercising jurisdiction over the claims in his complaint and why this case should not be dismissed without prejudice.

DATED December 27, 2024.

BY THE COURT:

_____
PHILIP A. BRIMMER
Chief United States District Judge
