Re. Case No. 1:24-cv-02880

Issue: Response to Show Cause Order

1. In order to show cause why this case should not be dismissed, Plaintiff addresses Judge Brimmer's arguments regarding Younger abstention. Plaintiff apologizes for not being completely versed in case law, but will sincerely attempt to address the chief judge's arguments to the best of his ability.

2. First, Plaintiff believes that filing for injunctive relief has caused confusion for the overall case, by causing the case to be re-assigned and the reason for reassignment may lead Chief Judge Brimmer to the incorrect assumption that the point of the civil suit is for D. Colo. to be involved in the custody case, but that is not the request of the civil suit.

3. Younger abstention may apply to the request for injunctive relief, but that point is now moot since the hearing has already been held. Plaintiff notes that the outcome of the hearing was, as feared, an adverse outcome for Plaintiff, which Plaintiff believes was incorrect. As suspected, all involved agreed there were no incidents that could justify a protection order, but the court ruled that the federal lawsuit filed (the only evidence presented) could be construed that Plaintiff might someday exhaust his legal options and then take action against the mother, despite no historical reason to justify this hypothetical scenario. In short, Plaintiff now has a restraining order against him, barring him from contact with a person all agreed he has not had contact with in almost 3 years. Regardless, Plaintiff does not believe this is the concern of D. Colo. By filing for injunctive relief (and ONLY by virtue of doing so) was the district court finally compelled to address the conflict of interest: The Chief Judge recused himself and his staff, the case is now being handled by one or more senior judges who have no affiliation with the Chief Judge or with the district. This is sufficient to assuage Mr. Weber's concerns that the case could be used to retaliate against Mr. Weber and regardless of Plaintiff's opinion of the outcome, the matter was decided under the laws and procedures of the state, so there are no issues to raise with D. Colo. with regards to the protection order. Plaintiff will simply file an appeal.

4. While Younger abstention may apply to the protection order, Plaintiff fears the issue has become confused for the overall suit. Plaintiff only asked for injunctive relief when it became clear that the individuals named in this lawsuit would continue to exercise jurisdiction over the case and could use their role to harm Plaintiff. But the point of the lawsuit is not for D. Colo. to determine if the state courts made wise decisions or decided issues properly within the domestic case. The point of the

lawsuit is to argue that the state of Colorado has taken no position on the domestic case at all. The primary argument is that the state improperly delegated its authority to an unauthorized third party, allowed that third party to remove Father's parental rights, then denied doing so and refused to correct the matter, and then refused to make any determinations of its own on the case, leaving the parents effectively without court orders over the last 5 years.

5. By way of analogy, if this were a criminal trial and Plaintiff requested D. Colo. to determine if standards of evidence were violated, D. Colo. would probably be correct in denying the petition until the trial was complete. But that is not the correct analogy here. The correct analogy here is that Plaintiff has been arrested for a crime and jailed pending a trial, but five years later, a trial has not been held and the state is increasingly denying the existence of the accused. Surely in that case, the accused would not have to wait for a trial that may never happen to appeal to the federal court that due process rights were violated. Such is the case here: Over the last five years, Plaintiff has been diligently filing, both through attorneys as well as self-represented, to have the state of Colorado make determinations on the child custody case. Plaintiff has waited patiently while the child went from age 12/13 to 18, while Plaintiff watched his life savings evaporate, only to find the state of Colorado systematically refuse to take a position on the case. Plaintiff has exhausted every means within the state to try to compel the state courts to take a position on the custody case, and has been systematically refused. The state's position is best characterized as "no comment."

6. So to clarify, this lawsuit should not be construed as a custody matter, but as a denial of due process issue because the state of Colorado has refused to respond to filings, refused to hold hearings, etc. The state of Colorado has made no findings with respect to the best interest of the child, it has made no determination of decision-making, cost-sharing, or child support. The state is required to make such findings when the parties cannot themselves come to an agreement, which is certainly the case here. The fact that this lawsuit is in regards to a child custody case is irrelevant; the Plaintiff's argument is that the state has denied him access to the courts, has denied Plaintiff the right to have the laws and procedures of the state applied to him and to his son.

7. D. Colo. raises the question of whether the US court can interere in an ongoing state case. There is not necessarily an end date to the domestic case. The only end date on record is for child support, which should terminate when Michael Weber turns 19. But unlike criminal cases or tort actions, the domestic case does not have an event that concludes it (a trial.) The case might never be terminated, at

least not explicitly. The recent filing by Mrs. Miller for a protection order is an example: It was raised unexpectedly in the context of the custody case, but the hearing itself did not conclude the custody case, only that specific motion.

8. In this case, because the child is now 18 and no longer feels bound by the parenting time orders, and because the parties have no means of communication, the only real matter remaining is child support. (While Plaintiff does not appreciate being slapped with a protection order for apparent reason, this has almost no practical effect since the parties have no contact with one another.)

9. Should D. Colo. find that it must abstain because the case is active, Plaintiff will be forced to re-file this suit in 11 months when Michael Weber turns 19. But this would have no practical effect other than to delay justice and force Plaintiff to incur more costs by re-filing and re-serving defendants. The burden caused by delay and having to re-start the process should be avoided unless there is good cause.

10. With regards to the first two prongs of Younger, abstention should not be necessary because Plaintiff is not asking D. Colo. to impact the domestic case and the issues brought up in the complaint are effectively in the past; the damage is done from denying Father and Son access to the court system and cannot be corrected at this point. Plaintiff at this point can only request that D. Colo. make the trivial finding that the state of Colorado removed parental rights improperly and failed to correct the matter because it simply would not resolve motions or hold mandatory hearings. This harm is ongoing, but this is irrelevant because there is no remedy. In other words, there is no need to wait for some event to occur at which point D. Colo. might intervene because there are no further relevant events. Even if the state courts corrected improperly filed orders at this point, there would be no way to correct many years' worth of harm already done. Aside from requesting an injunction for protective reasons against the specific venue of Jefferson County and the associated district court, Plaintiff is not in the lawsuit asking D. Colo. to override any of the state's interests or responsibilities in the case.

11. D. Colo. raises the question regarding the federal court intervening in matters of importance to the state. Plaintiff argues that, as stated in the original complaint, the request is not that D. Colo. make judgments regarding the welfare of the child or even judge the constitutionality of state laws, but rather Plaintiff is solely asking D. Colo. to determine that state laws have not been applied to the case at all and the matter could not be resolved with any state remedy (e.g. the appeals court), as every avenue has already been tried with the result being the state taking no position on the matter. Plaintiff reiterates for

emphasis: The state of Colorado has made no findings on the custody case. It delegated its powers, it delegated the rights of the Father and Son, to a private citizen and this is explicitly prohibited. Then after the state recognized its error, it ceased commenting on the case, leaving the parties without parental orders for all practical purposes.

12. The civil suit asks for the following: Damages for denial of parental rights and due process rights in general, an order to the state to determine which orders on the case were filed extra-legally and to vacate such orders, an order to the state to then terminate the custody case, and an order to the state to address corruption in the legal system. D. Colo. can certainly determine if parental rights were improperly denied (over the course of many years) regardless of whether the case is considered active because the state can no longer remedy the situation. The second request, an order to the state to determine what orders were filed unlawfully, is a request that D. Colo. order the state to apply the laws and procedures of the state to the case; that the state must be forced to take a position on the matter. While D. Colo. is concerned that Plaintiff is asking the federal court to override the state's interest in the case, the opposite is true: Plaintiff is asking D. Colo. to force the state to demonstrate that it has an interest in the case because it has avoided doing so over many years. The third request, asking D. Colo. to order the case terminated may run afoul of Younger, but it is not entirely clear. However, ordering the state to make a determination when the case would be terminated would not be running afoul of Younger, it would against be asking the state to make a determination that it should have already done. And finally, asking D. Colo. to order the state to address corruption has no bearing on this specific custody case, but rather to address the underlying problems that caused this lawsuit in the first place: Namely, that the state of Colorado allows the court system to police itself and this has caused rampant corruption, resulting in overwhelming complaints from the general public. As stated in the initial complaint, the custody case involved in this matter should be utterly trivial. Yet it has spawned MASSIVE amounts of litigation without ANY result, leading to a lawsuit against the state. This definitely should not happen.

13. Further, a major exception to Younger is if the state is acting in bad faith. That is certainly relevant here, as a large portion of the civil suit is arguing that not only did the state deny Plaintiff his rights, but it did so DELIBERATELY and MALICIOUSLY, and this is apparent from the case record in which filing after filing requests relief via the state taking a position on the case and the state refusing.

14. Another major component to this lawsuit is deception (which might be classified under "bad faith"):

The Colorado courts posed for years as though they were legitimately handling the custody case, while providing no answers to filings and not being pinned down on their position on the case. Only over time could Plaintiff detect that this was deliberate behavior to prevent the case from being resolved. As such, Plaintiff did what any parent would do and attempted to correct the case via the laws and procedures of the state, making filings asking the court to vacate improper orders and to set new ones using the correct processes under the statute, but the court did neither, even after five years of litigation.

15. To summarize: The first two prongs of Younger abstention should not apply because there is no time in which the case will not be active, there is no terminating event, the civil suit clearly argues that the state has acted in bad faith, and Plaintiff is only requesting that D. Colo. make determinations the state did not handle the case at all. Aside from asking for injunctive relief as a protective measure, there is nothing Plaintiff is asking for that could be construed as D. Colo. overriding the state's interest in the case. The Jefferson County Court could yet hold a hearing to determine the appropriate orders on the case; it just wouldn't matter at this point because the parties have effectively operated without court orders for the last 5 years. Nothing the state does at this point will make any difference with regards to this civil suit and nothing D. Colo. does with regards to the civil suit will affect the domestic case.

16. D. Colo. raises the question if due process issues should have been previously raised. There are two major issues cited in the complaint that fall under this question: One is the delegation of rights to an unauthorized person (Decision-Maker.) Two is the refusal of the state courts to handle the case.

17. Plaintiff will address the second issue first: The refusal of the state courts to handle the custody case, refusing to respond to filings, refusing to hold hearings, refusing to make determinations on the case, could not be addressed within the custody case itself. While consitutional "due process" wording may not have been used explicitly, it was definitely brought to the Jefferson County Court's attention (as well as the district court chief judge) that Plaintiff was asserting the court was refusing to do its duty to handle the custody case. Obviously, Plaintiff did not expect the court to respond productively to claims it was covering up the custody case, and it did not respond. There is no serious way that the custody case itself could be used to argue that the state is denying Plaintiff his rights by refusing to respond to filings if the state is expected to refuse to respond. Plaintiff repeatedly accused the court of covering up the case instead of handling it and requested relief by changing venue, changing judge, requesting the court clarify its orders, requesting the court comment on the case...the court ignored or denied these filings without explanation.

18. Further, as argued in the initial filing, Plaintiff could not file a lawsuit in response to these violations in any state court because any such court would fall under the jurisdiction of the state supreme court, which is named as Defendant. The state supreme court had already proved that it was not going to correct the orders on the case, it was not going to force the Jefferson County Court to correct the case, it was not going to move the case or ensure that the case was being handled. So this lawsuit must be brought in federal court.

19. The first issue, regarding raising due process issues with regards to the court allowing the DM to file orders, is more complicated. Without reviewing EVERY filing, Plaintiff cannot say with absolute certainty that the issue of constitutional due process rights was never raised, but the impropriety of the delegation of rights was heavily litigated (without any result.) Throughout 2020, 2021, and 2022, the court posed as though it were attempting to handle the case in a legitimate fashion. It was only after a period of a year during which the court had claimed it was too busy to respond to filings that Plaintiff realized the court had taken no position on the case that had been litigated for years and that this could not be the result of the court trying to handle the case legitimately.

20. So Plaintiff did not at first argue that the delegation of authority to the DM was a due process issue because it was expected the court would shortly correct the situation. Plaintiff did what any parent would do and attempted to correct the case using the procedures of the state to do so, not knowing the state had already decided NOT to comment on the case. Plaintiff raised over and over again that it was unlawful for the DM to file orders, but this argument was ignored (not rejected, but simply ignored.) The courts gave Plaintiff no reason to suspect that they would not simply apply the law to the case and that relief was merely a few weeks or months away. Since Plaintiff incorrectly believed he had the means to correct the matter through normal procedural order (due process), there was no reason to raise the issue as a violation of constitutional rights. And because the court was not responding to filings, it would not have mattered if the argument was raised or not. When Judge Tighe was finally compelled by the state supreme court to respond to a magistrate review of the DM order modifying parenting time, Judge Tighe claimed that the court had NOT allowed the DM to modify parental orders. So again, it would not have mattered if the constitutional rights issue had been raised because the court simply denied the issue existed in order to dodge such a question.

21. Regardless, the question of whether these issues should have been raised with the state during

litigation is irrelevant because the point of this lawsuit is not merely that the court made mistakes, but that it refuses to handle the case. These issues are ongoing and there is no procedural means for Plaintiff to raise these issues except in federal court. Only the federal court can make the determination that the state courts have systematically refused to apply the laws and procedures of the state to the custody case.

22. For example, Plaintiff filed a motion to modify parenting time in order to try to have the court set new orders on the case in a procedurally correct fashion, the court ordered this motion. However, THREE YEARS LATER, the motion has not been resolved. The court has not scheduled a hearing, all indications are that it will never set a hearing, and now that Michael is 18 there is little reason to pursue the motion. The damage is done. But Plaintiff cannot raise this as a due process violation within the state as there is no avenue to do so. Plaintiff believes that the refusal to respond to a motion to set orders after three years is far more than sufficient to justify a lawsuit regarding parental rights. Plaintiff notes that other successful lawsuits regarding parental rights have been decided on far weaker claims than this.

23. To summarize: The third prong of Younger is not relevant here because the lawsuit alleges that the state courts are refusing to handle the case at all, making the question of whether constitutional objections were raised moot. There is no way to raise such objections in the state courts. Such an objection could have been raised with regards to the DM's orders, but there was no reason to suspect the court would not simply correct the matter, as it had already indicated it knew it had made a mistake. It was only after years of litigation that it became clear the court was actively refusing to correct the matter or comment on the case in any way.

24. In conclusion, Plaintiff believes Younger abstention should not apply because the custody case has no termination, D. Colo. is not being asked to make determinations that the state should make, D. Colo, is being asked to find that the state has refused to make determinations it is required to make, D. Colo. is being asked to find that the state of Colorado has denied Plaintiff his rights by refusing to apply the laws and procedures of the state to the custody case, D. Colo. handling this civil suit would have no effect on the state's interest in the custody case and the custody case has no bearing on the lawsuit, Plaintiff is definitely claiming the state has acted in bad faith, and raising the issue of due process violations with the state during litigating the custody case is moot because the complaint is that the state is ignoring filings. Plaintiff cannot raise objections when no one is listening and can only object

that no one is listening in the state courts by appealing to the federal court.

25. Plaintiff believes this is an exceptionally straightforward denial of due process rights by virtue of the state first delegating these rights to an unauthorized person, then refusing to correct the harm that was done by that person, denying that the acts were done in the first place, and then itself refusing to make determinations on the child custody case that it is required to make. Plaintiff reiterates that the correct analogy is not that there is an ongoing trial in which issues should be raised, but that Plaintiff is denied a trial at all. Plaintiff respectfully requests the federal case be permitted to move forward, or should D. Colo. find it must dismiss the case without prejudice, Plaintiff respectfully requests guidance for re-filing.

Christopher Weber, January 7, 2025



Mr. Christopher Weber
4520 W. Mineral Ave., Apt. 206
Littleton, CO 80128-2605



DENVER CO 802

8 JAN 2025  PM 6  L



FOREVER · USA

RE: Case No. 1:24-CV-02880
901 19th St.
Denver, CO 80294

80294-250099